Nott, J.
delivered the opinion of the Court.
This was an application to set aside a sale, made by the commissioner under an order of the Court ofEquity ; or to Use the words of the Chancellor, “ in technical language to open the biddings.” The Chancellor granted the application, and the purchaser now moves to reverse the decree : and I am of opinion that the motion ought to be granted.
With all the respect which I feel for the learned Chancellor, and which is so justly due to him, I think the decree erroneous, both in form and substance : and it appears to me, that the error, if it be an error, is in considering this an application, “ in technical language to open the biddings ;” to which proceeding in the English Courts I think it will appear, upon investigating the subject, that it bears no analogy. In England, when a sale of land has been ordered by the Chancellor, the master first opens books for the purpose of receiving offers, or bids, for a given time ; at the expiration of which, the books, or the biddings, are closed, and the master reports his proceedings to the Chancellor. If in the meantime, and before the report is confirmed a higher offer is made, such offer may be received : or, as it is there properly termed, the biddings *18 are opened, although they had been previously closed : and sometimes, even after the report is confirmed, but before the terms are complied with, and the deeds executed, the biddings may be opened up011 terms. But in this State the course of proceeding is different. The commissioners are not limited to receiving bids, or offers; but they are directed sell to the highest bidder, and to execute titles. This, as far as I am informed, has been the invariable practice from the first establishment of the Court of Equity. In the case before us the commissioner was directed to sell the property to the highest bidder, and to take a bond, with security, for the purchase money, and a mortgage of the premises. The order, it is true, was not, in so many words, to execute titles : but that was implied in the instruction to take a mortgage of the premises, for without first executing titles a mortgage could not be given. The commissioner accordingly did execute and deliver titles to the purchaser; and such has been the invariable usage in this State To set aside the sale, and vacate the title of the purchaser, under these circumstances, is certainly therefore not at all analogous to the English proceeding of opening the biddings.
In New York, as far as I am able to collect from their reported' cases, something like a middle course is pursued. The master sells to the highest bidder; but titles are not executed until he reports his proceedings, and the report is confirmed : so that it is rather a contract to sell, than an actual sale, until it is approved by the Chancellor. In that stage of the proceedings, the Court has, in a few instances, set aside the sale under particular circumstances, but yet Chancellor Kent says, expressly, that the English practice of opening the biddings has never been adopted in that State. 3 Johns. Ch. R. 292.
I do not find therefore that a sale made by order of a Court of Equity has ever been set aside, either in England, or in any of the United States, after the teims have been complied with, and the deeds executed, except for fraud or under circumstances which would authorize the interference of the Court in any other case. In England titles are never executed until the report has been confirmed; and it appears to be now a settled rule in that country, that after confirmation of the report, the Court will not open the biddings, upon a higher offer, or for negligence, surprise, or cir~ *19 cumstances of that kind, unless there has been some misconduct on the part of the individual who has the benefit of the confirmation. 1 Bro. C. C. 287, 3 Id. 475, 11 Ves. 57, 14 Id. 151. And in New York, in the only two cases found in the reports of that State, Chancellor Kent relies upon the ground, that deeds had not been executed. 3 Johns. Ch. R. 290, Ib. 424. To set aside a sale therefore, after titles have been delivered, except upon some plain ground of ordinary equitable jurisdiction, is, in my opinion, without authority, or precedent. This brings me to the inquiry, whether the circumstances of this case were such as authorized the Chancellor to set aside the sale, and direct the deeds to be cancelled.
And this may be followed by another question, whether if the sale ought to be set aside, the manner of effecting the object directed by the decree is to be approved.
The two grounds on which the Chancellor professes to set aside the sale, are : 1st. A misapprehension, or mistake, on the part of the applicant, Mrs. Young, as to the manner of bidding at the time of sale. And 2nd, the non-compliance, on the part of the purchaser, with the terms of the sale.
In relation to the first ground, the Chancellor uses this strong language : “ That the sale was conducted by the commissioner, and by the auctioneer acting under his directions, with perfect fairness, ajrpears to me to be unquestionable from a review of the whole evidence.” And again, “It is unquestionably true, that neither the officer, nor Dr. Teague, the purchaser, produced, or contributed to, the unfortunate mistake.” Now it must be remarked, that neither Mrs. Young, nor any other person, was under any obligation, either moral, or legal, to bid for the property; and her interference was merely gratuitous. All that could be required was, that the sale should be fairly conducted, and the terms complied with. The first it is admitted was done ; and the second will by and by be considered. It does appear from the evidence, that Mrs. Young had requested Major Dunlap to bid for her to the amount of the appraised value of the land; and he says that he would have done so, but supposed the last bid to have been by her son. But it also appears, that Mrs. Young herself was present; that she had bid off two other tracts; and that she directed her son to stop bidding, for that he had bid enough. She afterwards said the land was worn *20 out: an(J that had bid as much as she intended to give, and that . . . . ’ . she did not want to go in debt; and if Major Dunlap was surprised, it does not appear that Mrs. Young, or her son, were, for they were both present: she ordered himvto stop bidding, and the land was cried at least ten minutes, says the witness, after the last bid was made, before it was knocked down. The amount of the evidence then is, that Mrs. Young is a capricious woman, who sometimes thought she would buy the land even at the appraised value, and at other times that she had bid as high as she could afford to give; who would have been willing to have taken it at a low price, and was probably -vexed that others bid against her. And who, upon the whole, did not know her own mind, and after it was too late became dissatisfied, although she would not bid higher at the time. But give to the testimony all the weight in favour of the applicants of which it is susceptible, it will not authorize the interposition of the Court to relieve them. It amounts to nothing more than this : that they neglected their own interests, and now wish the Court to do for them, what they ought to have done for themselves. The fact that minors are interested can have no influence upon the question, more than iri the case of a sale by the sheriff, when their interests are concerned. The widow had a greater interest, and her son, who was of age, an equal interest, with the minor children.
The next question is, whether the neglect of the commissioner to take a mortgage, as directed by the order of sale, can affect the rights of the purchaser. And here I admit, most unhesitatingly, that if the purchaser had refused, or neglected, or even now'refused, to comply with the terms of the sale, he would not have been intitled to derive any benefit from the purchase. It appears, however, that he did not refuse, but on the contrary was ready and willing to comply. All that the Court can require, therefore, is, that he should do now, what he ought to have done then ; give a mortgage according to the terms of the sale. The Chancellor himself says, “that sales made by the officers of this Court are subject in a great measure, to the same rules, and principles of justice, and equity, which prevail in other, and more private sales.” In this ojúnion I concur : and what I have stated is that which would be required in the case of a sale by an agent of an individual, and what of course ought to have been *21 done in this case ; that is, to require the purchaser now to comply with the terms of the sale.
The next question is, whether if the sale were properly set aside, it should have been upon the terms directed by the Chancellor. It appears that in England the biddings are never opened but upon a precedent condition, that a deposite of money shall be made as a security for the performance of the offer. In an anonymous case, 6 Ves. <513, the Lord Chancellor mentions with approbation a case during the time of Lord Thurlow, where the master of the rolls said, if the Lord Chancellor was the bidder he should make a large deposit; the deposit being the only hold the Court has on the purchaser : and ordered a deposit of the whole advance. And I lay it down as a rule never to be departed from, that if a sale is ever set aside forthe purpose of letting in a higher bidder, it shall be only upon the condition, that a deposit shall be made, or some adequate security given, by the person making the offer, for the performance of the undertaking. In this case no such terms are required. It is an unconditional decree that the sale be set aside. It is true Mrs. Young is required to give security for the advance which she has offered, and for further indemnity; but it is not made a condition precedent, nor has the Court any means of enforcing that order. There is therefore no security, that on another sale it will sell for more, or even as much as has already been given. I differ therefore in opinion from the Chancellor in the terms, as well as the principles, of the decree.
I might have dismissed this case, but the remarks of the Chancellor, as to the power and duties of the commissioner in relation to sales, seem to me to require a more specific notice ; inasmuch as his views upon this point are intimately connected with what I regard the fundamental error in this case, of considering the application of the complainants a motion, “ in technical language to open the bid-dings.” He says, “ It is the duty of the commissioner, when he has made a sale under the authority of the Court, to make a report, and a return; and thus enable the parties to examine, and say, whether they are satisfied, and also to enable the Court to exercise its judgment on the sale, and decree whether it ought to be confirmed or not :s and unless this be done before the conveyance is made to the purchaser, then the controlling power of the Court is *22 lost, and t]le commissioner substantially exercises the authority of deciding on the regularity of his own sales, and the rights of the parties. This the law has not committed to him, and it is therefore an exercise ofpowei which cannot be binding on the parties. I do not therefore consider the premature execution of a conveyance, without the sanction of the Court, and without even the express sanction of the parties interested in the estate, as barring the complainant’s right to relief.” Now I take it, that the powers of the commissioner are precisely what the decretal order of the Court confers. In this case I have shewn, that the order was to sell to the highest bidder, to take bond, and security, for the purchase money, and a mortgage of the premises, which implied an order to execute the titles. I do not therefore see upon what ground the commissioner can be charged'with having transcended his authority, when he has literally complied with the order of the Court. Neither can I see how it can be said that he has prematurely executed titles, wdien the fulfilment of his duty required that he should do so. Nor does it appear to me that this opinion of the Chancellor comports very well with that part of the decree which makes the non-execution of the mortgage a ground for setting aside the sale.
If the Court of Equity has hitherto been in the habit of conferring on the commissioner the power over sales of property which belongs to the Chancellor, and which can only be safely exercised by him, it is in the power of the Court to correct the evil. It will he only necessary to qualify the order of sale so as to restrict the authority of the commissioner in such manner as the Court shall think fit. The parties will then know what rights they have acquired, what liabilities they have incurred, and what duties they have to perform. And the officers of Court will know what powers they are to exercise, and what control the Court has reserved to itself. It is a subject, however, on which it will, perhaps, be difficult to adopt any general rule : and it must, therefore, as it appears to me, be left to the Chancellor, to adapt the order to the occasion. It would, certainly, be an excessive clog to sales, if the purchaser must wait a year, before he can know whether he can have the benefit of his purchase ; and.I think it at least questionable, whether the present mode will not be found to he attended with as few difficulties as any that can be adopted. If the directions of the-Court are not' *23 pursued, or if there is any fraud m the transaction, the Courts have . .. „ . . a controlling power over it: and if the proceedings are fair and reguiar, why should they interfere I This, however, is a matter on which I am disposed to suffer the Chancellors to make their own rules, without any interference on the part of this Court. And whatever directions they give their officers must pursue.
I will make but one other remark on the subject. Although the property in this instance has been sold for one-third less than its appraised value, it is as good a sale as has generally been made of real property in this State within the last three years. And for the proof of this assertion I refer with confidence to the sales which have been made in this town, and Charleston, and the lands which have been sold throughout the whole State within that period.
On the whole I am of opinion that the decree of the Chancellor must be reversed.
Johnson, J. concurred.
Colcock, J. dissented.

Decree reversed.